UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 07-20532-CIV-MARTINEZ/BANDSTRA

| | | |
|---|---|---|
| POWER PROTEIN PIZZA, INC.,<br>a Florida corporation, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| POWER PIZZA ENTERPRISES, INC.,<br>a Florida corporation, | ) | |
| | ) | |
| EUGENIO MARTINEZ, JR.,<br>an individual, | ) | |
| | ) | |
| EUGENIO MARTINEZ,<br>an individual, | ) | **PLAINTIFF'S PROPOSED** |
| | ) | **FINAL JURY INSTRUCTIONS** |
| POWER TWO, INC.,<br>a Florida Corporation, | ) | |
| | ) | |
| POWER 3, INC.,<br>a Florida Corporation, | ) | |
| | ) | |
| POWER 4, INC.,<br>a Florida Corporation, and | ) | |
| | ) | |
| POWER DISTRIBUTORS, INC.,<br>a Florida Corporation, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## <u>COURT'S INSTRUCTIONS TO THE JURY</u>

Members of the Jury:

I will now explain to you the rules of law that you must follow and apply in deciding this case.

When I have finished you will go to the jury room and begin your discussions-what we call your deliberations.

I.      **<u>Consideration of the Evidence</u>**

In deciding the case you must follow and apply all of the law as I explain it to you, whether you agree with that law or not; and you must not let your decision be influenced in any way by sympathy, or by prejudice, for or against anyone.

The fact that a corporation is involved as a party must not affect your decision in any way. A corporation and all other persons stand equal before the law and must be dealt with as equals in a court of justice. When a corporation is involved, of course, it may act only through people as its employees; and, in general, a corporation is responsible under the law for any of the acts and statements of its employees that are made within the scope of their duties as employees of the company.

In your deliberations you should consider only the evidence-- that is, the testimony of the witnesses and the exhibits I have admitted in the record-but as you consider the evidence, both direct and circumstantial, you may make deductions and reach conclusions which reason and common sense lead you to make. "Direct evidence" is the testimony of one who asserts actual knowledge of a fact, such as an eye witness. "Circumstantial evidence" is proof of a chain of facts and circumstances tending to prove, or disprove, any fact in dispute. The law makes no distinction between the weight you may give to either direct or circumstantial evidence.

Remember that anything the lawyers say is not evidence in the case. And, except for my instructions to you on the law, you should disregard anything I may have said during the trial in arriving at your decision concerning the facts. It is your own recollection and interpretation of the evidence that controls.

**Citation of Authorities:**

Instruction 2.2, Eleventh Circuit Pattern Jury Instructions (Civil Cases) 2005.

II.   **<u>Trademark Defined</u>**

As I previously told you, the term "trademark" includes any word, name, symbol or device or any combination thereof, adopted and used by a manufacturer or merchant to identify and distinguish its goods or services, including a unique product or service, from those sold or offered  by others and to indicate the source of those goods or services, even if that source is unknown.

The main function of a trademark is to identify and distinguish goods or services as a product or service of a particular merchant and to protect its goodwill against the sale of another's product as its own.

A trademark is also a merchandising symbol that helps a prospective purchaser to select the goods or services that the purchaser wants. A trademark signifies that all goods bearing the mark derive from a single source and are equivalent in quality. There is therefore a public interest in the use of trademarks.

**Citation of Authority:**

*Modern Federal Jury Instructions-Civil*, 86A-1 (Matthew Bender); 15 U.S.C. § 1129.

III.   **<u>Owner of Trademark</u>**

The law entitles the owner of a trademark to permit or exclude others from using that trademark. The owner of a trademark may enforce the right to exclude others in an action for trademark infringement.


**Citation of Authority:**

*Modern Federal Jury Instructions-Civil*, 86A-2 (Matthew Bender); 15 U.S.C. § 1114(1).

IV.     **Individual Liability**

In this case, there are both corporate Defendants and individuals who have been named as a Defendant. In considering liability as to an individual Defendant, you are advised that natural persons, as well as corporations, may be liable for trademark infringement and unfair competition. Because of its very nature, a corporation can act only through individuals. Obviously, if there was an infringement by the corporation, this infringement was caused by some one or more persons either officers or employees of the corporation who caused the acts to be done. If an individual actively and knowingly caused the infringement, he is personally liable. Thus, an individual who directs, controls, ratifies, participates in, or is the moving force behind the infringing activity, is personally liable for such infringement.

**Citation of Authority:**

Chanel, Inc. v. Italian Activewear of Florida, Inc., 931 F.2d 1472, 1477 (11th Cir. 1991);
Microsoft Corp. v. Moss, 2007 U.S. Dist. LEXIS 73672, *18 (N.D. Georgia 2007).

V.     **Burden of Proof**

In this case it is the responsibility of the Plaintiff to prove every essential part of the Plaintiff's claim by a "preponderance of the evidence." This is sometimes called the "burden of proof" or the "burden of persuasion."

A "preponderance of the evidence" simply means an amount of evidence that is enough to persuade you that the Plaintiff's claim is more likely true than not true.

In deciding whether any fact has been proved by a preponderance of the evidence you may consider the testimony of all of the witnesses, regardless of who may have called them, and all of the exhibits received in evidence, regardless of who may have produced them.

If the proof fails to establish any essential part of the Plaintiff's claim by a preponderance of the evidence, you should find for the Defendants as to that claim.

**Citation of Authority:**

Instruction 6.1, Eleventh Circuit Pattern Jury Instructions (Civil Cases) 2005.

VI.    <u>**Trademark Infringement and Unfair Competition Overview**</u>

In this case, the Plaintiff, Power Protein Pizza, Inc., seeks to recover money damages from the Defendants for trademark infringement and unfair competition, and further seeks a declaration that infringement and unfair competition have occurred, in order to allow the court to enter injunctive relief to prevent the Defendants from continuing to use their marks, slogans and materials of which Plaintiff complains. Plaintiff alleges that it owns the trademark POWER PROTEIN PIZZA for use in connection with its restaurant and food items.  Plaintiff alleges that the Defendants have unfairly competed and infringed upon this trademark by, among other things, using the term POWER PIZZA, and using other advertising slogans and materials in a manner likely to cause confusion to the consuming public. The legal principles regarding the law of trademark infringement discussed in these instructions result from attempts to balance the following conflicting policy objectives:

(1) the need to protect the public from being misled about the nature and source of the goods they buy;

(2) the need to protect the property rights of a business to identify itself and its goods to the public; and

(3) the need to try to achieve these goals while encouraging fair competition among those providing goods in our free-market economy.

In short, fair competition among those manufacturing and selling goods is encouraged, but unfair competition, including trademark infringement, is destructive of this competitive process and is illegal.

Because of the conflicting policy objectives involved in cases of this type, each case must be decided largely on its specific facts. You, the jury, are the judge of the facts.

**Citation of Authority:**

<u>Big O Tire Dealers, Inc. v. Goodyear Tire & Rubber Co.</u>, 408 F. Supp. 1219, 1242-1250 (D. Colo. 1976), modified on other grounds, 561 F.2d 1365 (10th Cir. 1977).

VII.    **Service Mark and Trademark Infringement Claims Pursuant to  15 U.S.C. §1125(a) and common law.**

The legal standard for federal trademark infringement and unfair competition and common law trademark infringement and unfair competition are essentially the same.   To establish its case for infringement and unfair competition, Plaintiff must show (1) that it had enforceable trademark rights in a trademark or name, and (2) that the terms or marks used by Defendants are likely to be confused with the mark or name in which Plaintiff possesses rights.

**Citation of Authority:**

Custom Mfg. & Eng'g, Inc. v. Midway Servs., 508 F.3d 641, 647 (11th Cir. 2007); Investacorp, Inc. v. Arabian Investment Banking Corp., 931 F.2d 1519, 1521-22 (11th Cir. 1991); Monsanto Co. v. Campuzano, 206 F.Supp.2d 1252, 1261-62 (S.D. Fla. 2002); Contemporary Restaurant Concepts, Ltd. v. Las Tapas-Jacksonville, Inc., 735 F.Supp. 1560 (M.D. Fla. 1991); Varitronics Systems, Inc. v. Merlin Equipment, Inc., 682 F.Supp. 1203 [6 USPQ2d 1789, 1790] (S.D. Fla. 1988); American Bank of Merrit Island v. First American Bank and Trust, 455 So.2d 443 (Fla. 5th DCA 1984); Carnival Corp. v. Seaescape Casino Cruises, Inc., 74 F.Supp.2d 1261 (S.D. Fla. 1999).

VIII.   **Are Plaintiff's Trademark Rights Enforceable.**

The first thing that you must decide in this case is whether the Plaintiff owns enforceable trademark rights. As I previously told you, the term "trademark" includes any word, name, symbol or device or any combination thereof, adopted and used by a merchant to identify and distinguish its goods or services from those sold or offered  by others and to indicate the source of those goods or services, even if that source is unknown.

In this case, Plaintiff asserts rights to the mark POWER PROTEIN PIZZA.  Plaintiff has not alleged that its trademark is registered.  However, a registration is not required in order to demonstrate that Plaintiff has enforceable rights to its trademark POWER PROTEIN PIZZA. When a mark is unregistered, a party has the right to the use of the mark if the mark is either inherently distinctive or has acquired distinctiveness through secondary meaning. Thus, Plaintiff must first show that the POWER PROTEIN PIZZA mark is distinctive. Additionally, in order to demonstrate that it has a right to the POWER PROTEIN PIZZA mark**,** Plaintiff must show that it is the senior user of the mark in its trade area.

**Citation of Authority:**

Freeway Ford, Inc. v. Freeway Motors, Inc., 512 F. Supp. 2d 1353, 1360 (M.D. GA 2007)**.**

IX.     **Distinctiveness of Mark.**

To demonstrate that Plaintiff has a protectable trademark, Plaintiff must show that its trademark is distinctive of its services and goods.  Plaintiff may do so either by showing that its mark POWER PROTEIN PIZZA is inherently distinctive, or, by showing that its mark has acquired distinctiveness through use. An inherently distinctive trademark is deemed to immediately serve as an identifier of source from the very first moment it is used.  A composite mark is tested for its distinctiveness by looking at it as a whole, rather than dissecting it into its component parts.

If you find Plaintiff's POWER PROTEIN PIZZA mark is not inherently distinctive, you must determine whether it has acquired secondary meaning. By the term "secondary meaning," the law means that a term has been so used that its primary significance in the minds of the consuming public is not the product itself, but instead the identification of it with a single source. This does not mean that the consuming public must know the exact identity of that single source in the sense that it knows the name of the corporation or other entity producing or selling the product. All that is necessary to establish secondary meaning is that the ordinary consumer associates the product with a single source, regardless of whether the consumer knows who or what that source is.

The Eleventh Circuit considers four factors to determine whether a particular mark has acquired secondary meaning: 1) the length and manner of its use; 2) the nature and extent of advertising and promotion; 3) the efforts made by plaintiff to promote a conscious connection in the public's mind between the name and plaintiff's business; and 4) the extent to which the public actually identifies the name with plaintiff's goods and services.  Proof of intentional copying is itself persuasive evidence of secondary meaning.

The Plaintiff need not prove that all or even a majority of the consuming public understands this secondary meaning.  Additionally, there is no particular time within which secondary meaning need be established. The question for you to determine is whether secondary meaning has been established, not in how long or short a time this was done.

**Citation of Authority:**

Park n  Fly, Inc. v. Dollar Park and Fly, Inc., 469 U.S. 189 (1985);  McCarthy on Trademarks and Unfair Competition §§11:4 (2007); Gift of Learning Found., Inc. v. TGC, Inc., 2001 U.S.

Dist. LEXIS 25301 (D. Fla. 2001); <u>Coach House Restaurant, Inc. v. Coach and Six Restaurants, Inc.</u>, 934 F.2d 1551 (11th Cir. 1991); <u>General Conference Corp., v. Perez</u>, 97 F.Supp.2d 1154 (S.D.Fla. 2000);  <u>Ideal Toy Corp. v. Plawner Toy Mfg. Corp.</u>, 685 F.2d 78, 82 (3d Cir. 1982); Brooks Shoe Mfg. Co. v. Suave Shoe Corp., 716 F.2d 854, 859 (11th Cir. 1983)

X.   **Senior Use of the Mark.**

The first to use a mark on a product or service in a particular geographic market acquires rights in the mark in that market. Thus, to determine whether Plaintiff is the senior user of its trademark, you must determine whether Plaintiff used its mark POWER PROTEIN PIZZA in connection with its products and services prior to Defendants' use of their accused marks and slogans in connection with their products and services.

In making this determination, you are instructed that "use" of a trademark does not mean merely incorporating under a name, or conceiving of a name, or otherwise deciding to use a name in a manner that is not public and in connection with the actual sales of goods or services.

In this case, the parties claim respective trademark rights to their marks in connection with restaurant services and associated food items. With respect to establishment of trademark rights in a service, sometimes called a "service mark," all that is necessary to establish proper use is to prove that the mark is used or displayed in the sale or advertising of services in such a way as to identify the services of one person or business and distinguish them from the services of others.  Proper usage of a mark to identify restaurant services would include, but would not necessarily be limited to, use on menus, signage and advertising, such as newspaper advertising. Even use of a term in advertisements for related products may be sufficient evidence of service mark usage. If you determine that the Plaintiff has established that Plaintiff used POWER PROTEIN PIZZA before the Defendants used POWER PIZZA, then you have determined that the Plaintiff has priority.

**Citation of Authority:**

Popular Bank v. Banco Popular, 9 F. Supp. 2d 1347, 1353 (S.D. Fla. 1998);  McCarthy v.2, sec. 16:33.

XI.     **Likelihood of Confusion**

  If you decide that the Plaintiff established POWER PROTEIN PIZZA as a trademark for the Plaintiff's products before the Defendants did, then you must consider whether the Defendants used POWER PIZZA in a manner likely to cause confusion regarding the source of these goods among consumers using ordinary care and prudence in the purchase of these goods.

  In determining whether there is likelihood of confusion it is unnecessary that the evidence show that any specific person has been confused or misled.  It is enough if you find that the Defendants' use of the POWER PIZZA mark could in all reasonable probability confuse the public regarding the source, sponsorship, approval, or affiliation of its products.  The fact that the products could be distinguished by careful purchasers is not enough to lead you to conclude that there is no likelihood of confusion.

  Ultimately, in determining whether the Defendants used POWER PIZZA in a manner likely to cause confusion regarding the source of the Plaintiff's and the Defendants' goods, you may draw on your common experience as citizens of the community.  There are various factors which you should consider in determining whether a likelihood of confusion exists between two trademarks.   These include:

  (1) the type of trademark;

  (2) the similarity of the marks;

  (3) the similarity of the products the marks represent;

  (4) the similarity of the parties' retail outlets and purchasers;

  (5) the similarity of the advertising media used;

  (6) the Defendants' intent; and

  (7) actual confusion.

  Nevertheless, consideration of fewer than all seven factors can support a finding of likelihood of confusion.

  The price level of the goods is also an important factor in determining the amount of care that a reasonably prudent buyer will use.  Purchases of relatively inexpensive goods, such as grocery store foods or snack foods, are often impulse buys.   Thus, consumers involved in such transactions typically use a lesser degree of care in selecting such products and are more likely to be confused as to source or affiliation.  As such, the risk of a likelihood of confusion is increased

in these circumstances, and purchasers of such products are held to a lesser standard of purchasing care.

Please note that no one factor or consideration is conclusive, but each should be weighed in light of the total evidence presented at the trial.  However, if the evidence is clear that Defendants deliberately intended to copy Plaintiff's trademark, then the intent to copy in itself creates a rebuttable presumption of likelihood of confusion.

**Citation of Authority:**

El Rancho, Inc. v. First Nat'l Bank of Nevada, 406 F.2d 1205 (9th Cir. 1968); In re Martin's Famous Pastry Shoppe, Inc., 748 F.2d 1565 (Fed Cir. 1984);3 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition, §23.95-102 (2007); Lone Star Steakhouse & Saloon v. Longhorn Steaks, 122 F.3d 1379, 1381 (11th Cir. 1997); Dieter v. B & H Industries of Southwest Florida, Inc., 880 F.2d 322, 326 (11th Cir.1989); Carillon Importers v. Frank Pesce Group, 913 F. Supp. 1559, 1565 (S.D. Fla. 1996); Bauer Lamp Co. v. Shaffer, 941 F.2d 1165, 1172 (11th Cir. 1991); AmBrit, Inc. v. Kraft, Inc., 812 F.2d 1531, 1542 (11th Cir. 1986); Monsanto Co. v. Campuzano (Nutrasweet Co.),  206 F. Supp. 2d 1252, 1262 (S.D. Fla. 2002); 15 U.S.C. § 1114(1)(a).

XII.   **Strength of the Mark**

When you consider the marks involved, you will need to determine the strength of the Plaintiff's mark, by which is meant its distinctiveness. A useful manner of categorizing marks, in ascending order of strength, involves determining whether the words of the trademark are (1) descriptive, (2) suggestive of a product or service, (3) arbitrarily applied to a product, or (4) coined words.   However, remember, that the fact that a word is in "common usage" is irrelevant in determining the strength of a mark.   The issue is whether that the way the word is used in a particular context is unique enough to warrant trademark protection.

Terms which are merely descriptive of a product are not inherently distinctive.   A term is deemed merely descriptive when it identifies a characteristic, quality, or function of a product or service.

A suggestive term suggests characteristics of the product and requires an effort of the imagination by the consumer in order to be understood as descriptive.   Such a mark is deemed inherently distinctive, and therefore does not require secondary meaning to be afforded protection.   Examples of suggestive marks include: "HEARTWISE" for low-fat, low-cholestorol foods; "ORANGE CRUSH" for orange drinks; "RAPID-SHAVE" for shaving cream; "CITIBANK" for an urban bank; and , "COPPERTONE" for sun tan oil.

Arbitrary or fanciful trademarks bear no relation to the product.   Such marks are considered to be strong trademarks, and are accorded the most protection.

The words in a mark are not, however, the sole factors determining its strength. Also important is the extent of third-party use of the words of the mark.   However, the probative value of third party usage of the mark on wholly unrelated products is small. Similarly, evidence that third parties incorporate the disputed mark along with additional distinguishing terms or use the term in a different business does not necessarily diminish the strength of a mark.

**Citation of Authority:**

Investacorp, Inc. v. Arabian Investment Banking Corp., 931 F.2d 1519, 1521-22 (11th Cir. 1991); Two Pesos Inc. v. Taco Cabana Inc., 505 U.S. 763  (1992); In re Lar Mor International, Inc., 221 USPQ 180 (TTAB 1983) (Registration law); Michael Caruso & Co., Inc. v. Estefan Enterprises, Inc., 994 F. Supp. 1454 (S.D. Fla. 1998); Nida Corp. v. Nida, 118 F.Supp.2d 1223 (M.D. Fla. 2000); 15 U.S.C. §1115(a); Safeway Stores, Inc. v. Safeway Discount Drugs, Inc., 675 F.2d 1160

(11th Cir. 1982); McCarthy's §11:87; <u>Wynn Oil Co. v. Thomas</u>, 839 F.2d 1183, n.4 (6th Cir. 1988); <u>Century 21</u> <u>Real Estate Corp. v. Century Life of America</u>, 970 F.2d 874 (Fed. Cir. 1992); <u>Two Pesos Inc</u> , 23 USPQ2d at 1083; <u>Deltona Transformer Corp. v. Wal-Mart Stores</u>, 115 F.Supp. 2d 1361 (M.D. Fla. 1999); <u>In re Lar Mor International, Inc.</u>, 221 USPQ 180 (TTAB 1983); <u>Deltona Transformer Corp. v. Wal-Mart Stores</u>, 115 F.Supp. 2d 1361 (M.D. Fla. 1999); <u>Deltona Transformer Corp. v. Wal-Mart Stores</u>, 115 F.Supp. 2d 1361 (M.D. Fla. 1999); <u>Great Southern Bank v. First Southern Bank</u>, 625 So.2d 423 (Fla. 1993); McCarthy's §11:72.

XIII.   **Intent to Copy**

Intent to copy, in and of itself, creates a presumption of a likelihood of confusion. In determining an intention to copy, an admission by the Defendants of intentional copying is not required.  Rather, you may, but are not required, to rely upon circumstantial or indirect evidence of intentional copying, which may include but is not limited to factors such as knowledge of the Plaintiff's mark by a competitor and any striking similarities in the marks and their presentation. For example, proof that a Defendant knew of Plaintiff's mark at the time Defendant chose its mark may be relied upon as evidence of bad faith and an intention to trade upon another's good will.

This is true even if the Defendants attempted to create a mark which came as close to the Plaintiff's mark as the law would allow.  This would still constitute the intent to derive benefit from the Plaintiff's reputation and is therefore probative on the likelihood of confusion issue.

**Citation of Authority:**

15 U.S.C. § 1117(a); Bauer Lamp Co. v. Shaffer, 941 F.2d 1165, 1172 (11th Cir. 1991); Carillon Importers v. Frank Pesce Group, 913 F. Supp. 1559, 1566 (S.D. Fla. 1996); McCarthy, §23:116; AmBrit, Inc. v. Kraft, Inc., 812 F.2d 1531, 1543 (11th Cir. 1986); Nailtiques Cosmetic Corp. v. Salon Sciences Corp., 41 U.S.P.Q.2D (BNA) 1995 (S.D. Fla. 1995).

XIV.   **Similarity of the Marks**

One factor for consideration in your determination of whether a likelihood of confusion is present is the similarity of the marks. In trademark law a "side-by-side" comparison is not the test. This is because appearance of the litigated marks "side-by-side" in the courtroom does not accurately portray actual market conditions.  Instead, the marks must be viewed in their entirety and in the real-world context in which the alleged trademark use occurs. You must determine, in the light of what occurs in the marketplace, whether there will be a likelihood of confusion by the public when the marks are singly presented. Your determination should consider whether a given mark would by likely to confuse the public when viewed alone, in order to account for the possibility that sufficiently similar marks may be likely to confuse consumers who do not have both marks before them but who may have a general, vague, or even hazy, impression or recollection of the other party's mark.

Accordingly, the similarity of the marks is determined by considering the overall impression created by the marks as a whole rather than simply comparing individual features of the marks.  In your determination of the likelihood of confusion, you are instructed that likelihood of confusion cannot be predicated on dissection of a mark, that is, on only part of a mark.

In evaluating the similarity of marks, the inquiry must be the overall impression created by the marks, including a comparison of the appearance, sound and meaning of the marks.  You may also consider the manner in which the marks are displayed, including, for example, background colors used. In this way, similarities may be accentuated by the manner in which the marks are used.

**Citation of Authority:**

Custom Mfg. & Eng'g, Inc. v. Midway Servs., 508 F.3d 641, 651 (11th Cir. 2007); Daddy's Junky Music Stores v. Big Daddy's Family Music Ctr., 109 F.3d 275, 283 (6th Cir. 1997);  Homeowners Group, Inc. v. Home Marketing Specialists, Inc., 931 F.2d 1100, 1108 (6th Cir. 1991); John H. Harland Co. v. Clarke Checks, Inc., 711 F.2d 966, 975-76 (11th Cir. 1983); Tancogne v. Tomjai Enterprises, Inc., 408 F. Supp. 2d 1237, 1247 (S.D. Fla. 2005).

XV.    **Actual Confusion**

Plaintiff may also present evidence of actual confusion, which is also powerful evidence of a likelihood of confusion**.** The Plaintiff is not required to provide evidence of actual confusion in order to prove a likelihood of confusion. Instead, actual confusion is merely one of several factors that may be relevant in analyzing whether there is a likelihood of confusion between two marks.  However, while actual confusion is not required in determining whether there is a likelihood of confusion, there can be no more positive or substantial proof of the likelihood of confusion than proof of actual confusion.  Where there is evidence of actual confusion, this is ordinarily decisive.

**Citation of Authority:**

John H. Harland Co. v. Clarke Checks, Inc., 711 F.2d 966, 978 (11th Cir. 1983); New Century Mortg. Corp. v. 123 Home Loans, Inc., 2006 U.S. Dist. LEXIS 84254, ** 9-10 (S.D. Fla. 2006); Nailtiques Cosmetic Corp. v. Salon Sciences Corp., 41 U.S.P.Q.2D (BNA) 1995 (S.D. Fla. 1995).

**XVI.   Claims pursuant to Florida common law rights**

Florida common law trademark infringement follows the same analysis as that used under Lanham Act claims.    Therefore, a showing that Defendants' conduct constitutes trademark infringement under the Lanham Act will suffice to maintain a claim of common law infringement under Florida law.

**Citation of Authority:**

Gift of Learning Found., Inc. v. TGC, Inc., 329 F.3d 792, 802 (11th Cir. 2003); PepsiCo, Inc. v. Distribuidora La Matagalpa, Inc., 510 F. Supp. 2d 1110, 1114 (S.D. Fla. 2007).

**XVII.  <u>Fraudulent Registration</u>**

You must next determine whether Defendant made any false or fraudulent representations or declarations when it obtained its Florida registration.  In making this determination you may consider any representations the Defendant made verbally or in writing, or by any other fraudulent means.  If you find that the Defendant knowingly made any such representations, then you have determined that the Defendant's Florida registration was fraudulently obtained.

**Citation of Authority:**
Fla. Stat. § 495.121.

**XVIII.  Cancellation of Florida Registration**

If you have found that the Defendant's mark creates a likelihood of confusion or that the Defendant's registration was fraudulently obtained, then you have determined that the Defendant's Florida registration must be cancelled.  However, even if you have not made these determinations, the Defendant's registration must still be cancelled if you find that it was granted improperly or has been abandoned.

**Citation of Authority:**
Fla. Stat. § 495.101.

**XIX.**   **Unfair Competition claims**

   Trademark infringement is a form of unfair competition.   Therefore if the Defendants' conduct constitutes trademark infringement then the Defendants must also be guilty of unfair competition.   However, the law of unfair competition also acts as an umbrella for all statutory and non-statutory causes of action arising out of business conduct which is contrary to honest practices in industrial or commercial matters.    As such, even you have not found that the Defendants engaged in trademark infringement, you may still find that Defendants are guilty of unfair competition if any of their actions have run contrary to honest and fair business practices.

**Citation of Authority:**

Chassis Master Corp. v. Mister Chassis Inc., 610 F. Supp. 473, 479 (S.D. Fla. 1985); American Heritage Life Insurance Co. v. Heritage Life Insurance Co., 494 F.2d 3, 14 (5th Cir. 1974).

XX.   **Compensatory Damages**

Compensatory damages means the amount of money that will reasonably and fairly compensate the Plaintiff for any injury you find was caused by the Defendants' infringement of the Plaintiff's trademark. In determining compensatory damages, the difficulty or uncertainty in ascertaining the precise amount of any damages does not preclude recovery; instead, you should use your best judgment in determining the amount of such damages. You may not, however, determine damages by speculation or conjecture.

In assessing compensatory damages, you should consider whether the Defendants' infringement of the trademark caused the following:

(1)  any injury to Plaintiff's reputation;

(2)  any injury to the product's or the Plaintiff's goodwill, as that term is defined in this instruction, including injury to the Plaintiff's general business reputation;

(3)  any loss of Plaintiff's sales; and

(4)  any loss of Plaintiff's profits.

In addition, you may also consider any evidence that the Defendants' infringement will necessitate prospective costs, including any expense incurred by the Plaintiff in preventing customers from being deceived, misled, or confused, or any cost of future corrective advertising reasonably required to correct any customer confusion. Such a prospective award, however, may not exceed the actual damage to the value of the trademark at the time of the infringement. Lastly, you may consider any other factors that bear on Plaintiff's actual damages.

In assessing damages for injury to the Plaintiff's goodwill, you are instructed that the goodwill of a company is an intangible business value that reflects the basic human tendency to do business with merchants who offer products of the type and quality the customer desires and expects. The goodwill associated with a particular product or business may be symbolized by the consuming public's acceptance and recognition of a trademark. The goodwill attached to a product is often a part of the company's overall goodwill. It is possible, therefore, that the general goodwill of a company may be damaged by the loss of goodwill to a particular product. Whether this has occurred is a question of fact for you to answer.

If you find that the Plaintiff's goodwill has been damaged, either by injury to its general business reputation, or by injury to the goodwill of the product, you may assess whatever

compensatory damages you find justified by the evidence. The measure of the Plaintiff's damage is the difference between the value of such goodwill before and after the acts of the Defendants.

The fact that the Defendants did not actually intend, anticipate, or contemplate that any of these categories of compensatory damages would occur is not a basis for you to deny awarding the damages to the Plaintiff.

**Citation of Authority:**

*Modern Federal Jury Instructions-Civil*, P 86A-23 (Matthew Bender);15 U.S.C. § 1117(a)

XXI.   **Recovery of Profits**

As an additional category of compensatory damages, the Plaintiff is entitled to any profits earned by the Defendants that are attributable to the Defendants' infringement. You may not, however, include in any award of such profits any amount that you already took into account in assessing compensatory damages under prior instructions.

Profit is determined by deducting all expenses from gross revenue. Gross revenue is all of Defendants' receipts from using the infringing mark in the sale of its product. The Plaintiff has the burden of proving a Defendants' gross receipts by a preponderance of the evidence.

Expenses are all costs incurred in producing the gross revenue. The Defendants have the burden of proving the expenses. The Defendants also bear the burden of proving that any portion of the profit is attributable to factors other than the infringement. The Defendants must prove each of these by a preponderance of the evidence.

Unless you find that a portion of the profit from the sale of the products using the trademark is attributable to factors other than use of the trademark, you shall find that the total profit is attributable to the infringement.

**Citation of Authority:**

*Modern Federal Jury Instructions-Civil*, 86A-24(Matthew Bender); 15 U.S.C. § 1117(a).

**XXII.  Punitive Damages under Florida statute and common law**

If you find for the Plaintiff, you may also consider whether, in addition to compensatory damages, the Plaintiff is entitled to punitive damages.  Such damages may be appropriate if you determine that Defendant fraudulently obtained its Florida registration or engaged in any other actions that merit punitive damages.  In assessing punitive damages you must consider the harm that has actually occurred due to the Defendants actions.  The purpose of punitive damages is not to further compensate the Plaintiff, but to punish the Defendants for any wrongful conduct and to deter any similar misconduct by the Defendants and other actors in the future.

The parties may present additional evidence related to whether punitive damages should be assessed and, if so, in what amount.  In making your decision, you should consider this additional evidence along with the evidence already presented.   You may assess punitive damages against one defendant and not the others, or against more than one Defendant.  Punitive damages may be assessed against different Defendants in different amounts.

Obviously what might be a significant punishment to a party with relatively small financial means would not be felt by a party with large means.  Thus, in determining the amount of punitive damages, the financial circumstances of the Defendants are to be considered.


**Citation of Authorities:**
Fla. Stat. § 495.121; Fla. Stat. § 768.72;  Florida Standard Jury Instructions – Civil Cases, PD §2; Miami Beach Lerner Shops, Inc. v. Walco Mfg. of Florida, Inc., 106 So. 2d 233, 266 (Fla. 3rd DCA 1958); W. R. Grace & Co.-Conn. v. Waters, 638 So. 2d 502, 504 (Fla. 1994); Owens-Corning Fiberglas Corp. v. Ballard, 749 So. 2d 483 (Fla. 1999).

## XXIII. **Injunctive Relief**

An injunction against Defendant may be awarded according to the principles of fairness. A Plaintiff is entitled to an injunction under the Lanham Act, if:

(1)  the Plaintiff's mark is eligible for protection;

(2)  the Plaintiff is the senior user of the mark;

(3) a likelihood of confusion between the Plaintiff's mark and the Defendants' mark exists; and

(4) the likelihood of confusion will actually cause irreparable injury.

In a trademark case, grounds for irreparable injury include loss of control of reputation, loss of trade, and loss of goodwill.   If you find that the Defendants have infringed on the Plaintiff's mark, you may presume that the Plaintiff will suffer irreparable injury.

**Citation of Authority:**

Neva, Inc. v. Christian Duplications Int'l, Inc., 743 F. Supp. 1533, 1548 (M.D Fla. 1990)(principles of equity); Dive N' Surf v. Anselowitz, 834 F. Supp. 379, 383 (M.D. Fla. 1993); Tally-Ho, Inc. v. Coast Community College Dist., 889 F.2d 1018, 1029 (11th Cir. 1989). Davidoff & CIE SA v. PLD Int'l Corp., 2000 U.S. Dist. LEXIS 19243 (S.D. Fla. 2000).

**XXIV.** <u>**Intentional Infringement**</u>

If you find that the Defendants infringed the Plaintiff's trademark, you must also determine whether the Defendants used the trademark intentionally, knowing that to do so was an infringement.

**Citation of Authority:**

*Modern Federal Jury Instructions-Civil*, 86A-25 (Matthew Bender); 15 U.S.C. § 1117(a).

**XXV.  <u>Duty to Deliberate</u>**

Of course, the fact that I have given you instructions concerning the issue of Plaintiff's damages should not be interpreted in any way as an indication that I believe that the Plaintiff should, or should not, prevail in this case.

Any verdict you reach in the jury room must be unanimous. In other words, to return a verdict you must all agree. Your deliberations will be secret; you will never have to explain your verdict to anyone.

It is your duty as jurors to discuss the case with one another in an effort to reach agreement if you can do so. Each of you must decide the case for yourself, but only after full consideration of the evidence with the other members of the jury. While you are discussing the case do not hesitate to re-examine your own opinion and change your mind if you become convinced that you were wrong. But do not give up your honest beliefs solely because the others think differently or merely to get the case over with.

Remember, that in a very real way you are judges-judges of the facts. Your only interest is to seek the truth from the evidence in the case.

**Citation of Authorities:**

Instruction 7.1, Eleventh Circuit Pattern Jury Instructions (Civil Cases) 2005.

The foregoing proposed Jury Instructions are hereby submitted by the Plaintiff.

Respectfully submitted,

Dated: January 28, 2008                    By:    _____
         Miami, Florida                             John Cyril Malloy, III
                                                    Florida Bar No. 964,220
                                                    jcmalloy@malloylaw.com
                                                    David A. Gast
                                                    Florida Bar No. 176,567
                                                    dgast@malloylaw.com
                                                    Malloy & Malloy, P.A.
                                                    2800 S.W. 3rd Avenue
                                                    Miami, FL 33129
                                                    Telephone: (305) 858-8000
                                                    Facsimile: (305) 858-0008
                                                    Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 07-20532-CIV-MARTINEZ/BANDSTRA

|  |  |
|---|---|
| POWER PROTEIN PIZZA, LLC, a Florida corporation, | ) ) ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) |
| POWER PIZZA ENTERPRISES, INC., a Florida corporation, | ) ) ) |
| EUGENIO MARTINEZ, JR., an individual, | ) ) ) |
| EUGENIO MARTINEZ, an individual, | ) ) ) |
| Defendants. | ) ) ) |
| _____ | ) |

**Certificate of Service**

I HEREBY CERTIFY that on this 28th day of January 2008, I electronically filed the foregoing document with the Clerk of the Court using its CM/ECF system.  I also certify that the foregoing document is being serviced this day on all counsel of record or pro se parties identified on the attached service list in the manner specified either via transmission of Notices of Electronic filing generated by this Court's CM/ECF system or in some other authorized manner for those counsel or parties who are not authorized to electronically receive Notices of Electronic Filing.  A copy of said Jury Instructions was hand delivered to Chambers  at approximately 4:00 pm, on this 28th day of January 2008.

s/ David A. Gast_____
David A. Gast
Florida Bar No. 176,567
dgast@malloylaw.com
Malloy & Malloy, P.A.
2800 S.W. 3rd Avenue
Miami, FL 33129
Telephone: (305) 858-8000

Facsimile: (305) 858-0008
Attorneys for Plaintiffs

**SERVICE LIST**
POWER PROTEIN PIZZA, LLC
v.
POWER PIZZA ENTERPRISES, INC.,
EUGENIO MARTINEZ, JR., and
EUGENIO MARTINEZ


CASE NO. 07-20532-CIV-MARTINEZ/BANDSTRA
United States District Court, Southern District of Florida

John Cyril Malloy, III
jcmalloy@malloylaw.com
David A. Gast
dgast@malloylaw.com
Malloy & Malloy, P.A.
2800 S.W. 3rd Avenue
Miami, FL 33129
Telephone: (305) 858-8000
Facsimile: (305) 858-0008
Attorneys for Plaintiff

Susan Joy Latham
slatham@feldmangale.com
Feldman Gale, P.A.
2 South Biscayne Boulevard
30th Floor
Miami, Florida 33131-2148
Telephone: (305) 358-5001
Facsimile: (305) 358-3309
Attorney for Defendants

Notices of Electronic Filing generated by CM/ECF